## No. 9142.

### SHERMAN *v.* GREELEY BUILDING & LOAN ASSOCIATION.

1. TAX SALE—*Amount Bid—Presumptions.* It will not be lightly assumed that a tax sale was made for an excessive amount; on the contrary this must be clearly shown. Figures in the column of "Penalties and Costs," construed to import the fee of the treasurer for issuing the certificate of purchase.

2. ——*Offer for Sale—Construed.* Before commencing the tax sale the treasurer read the published notice, which stated that on a date named he would offer for sale, "so much of the following described real estate as shall be necessary to pay the tax herein set down" etc. *Held* equivalent to an offer to receive bids for less than the whole amount of any tract. Three town lots were offered as one parcel. There was no bid for less than the whole. *Held* the lots were properly stricken off to the one making this bid.

EFFECT of the Amendment of the Statute in 1902 (Rev. Stat., secs. 5720, 5729) considered.

3. ——*Rate of Interest.* To strike off land to one offering to accept "the maximum rate of interest" was lawful, and within the treasurer's duty and authority.

4. TAX DEED—*Effect.* A valid tax deed extinguishes all previous encumbrances.

5. APPEAL AND ERROR—*Questions not Presented Below,* will not be considered.

*Error to Weld District Court, Hon. Neil F. Graham, Judge.*

Messrs. MANN & MANN, for plaintiff in error.

Mr. JOHN F. MAIL, for defendant in error.

Opinion by Mr. Justice Allen:

THIS is an action which originated as one in ejectment by The Greeley Building and Loan Association, hereinafter designated as the plaintiff, against Clarence E. Sherman, defendant, to recover the possession of Lots One, Two and Three in Block Five, Mountain View, an addition to the City of Greeley, Weld County, Colorado. The defendant filed a cross-complaint, alleging that he is the owner in fee simple, and in the possession of the above described real estate, and praying that the title thereto may be quieted in him. At the trial the plaintiff dismissed its complaint

in ejectment, and the cause was tried as a suit, brought by defendant, to quiet title.

The plaintiff, in its answer to the defendant's cross-complaint, alleged, in substance, that it is the owner of a certain deed of trust; that the trust deed is a valid and subsisting lien upon the lots involved in this suit; that the defendant claims title to the property by and through a certain tax deed, and that such tax deed is void.

The trial court found the issues for the plaintiff, and the facts to be in accord with the above mentioned allegations of the plaintiff's answer. The defendant's tax deed was adjudged to be void. The defendant brings the cause here for review, and the main question presented for our determination is the validity of the above mentioned tax deed, upon which the defendant bases his title.

One of the contentions of the plaintiff, to establish the alleged invalidity of the tax deed, is that at the tax sale upon which the deed is based, the land was "stricken off for more than was due thereon in taxes and interest." The evidence does not support this contention. As said in 37 Cyc. 1339, "it will not be lightly assumed that the sale was made for an excessive amount; on the contrary, this must be clearly shown." The record fairly shows that the lots were sold for the amount which was actually due. The plaintiff's contention to the contrary is based, principally it seems, upon the fact that the tax sale certificate contains the figure "50" (meaning cents) in the column headed "Amount of Penalties and Costs paid." The plaintiff asserts that the "penalty" could not be fifty cents. However, the county treasurer was entitled to fifty cents for issuing the certificate of purchase, and since this sum is not mentioned or included elsewhere in the certificate, it is reasonable to infer that it was placed under the above mentioned heading, and that the fifty cents referred to was the cost of issuing the certificate.

It is also contended by the plaintiff that the defendant's tax deed is void because "the property was never offered by

the treasurer to any one who would take a less amount than the whole thereof."

The evidence shows that, at the tax sale at which the property in controversy was sold, the county treasurer, before receiving any bids or offering any lands for sale, read the notice of tax sale. The notice was in the form prescribed by section 5706, R. S. 1908, and stated, among other things, that the county treasurer would "offer for sale at public sale, * * * on the 9th day of December, A. D. 1911, * * * so much of the following described real estate * * * as shall be necessary to pay the tax herein below set down, interest and penalties, to-wit: "Then follows the list of lands to be sold. No objection was made to the form of the notice, nor to any other matter relating thereto, and it must be assumed, therefore, that the notice sufficiently states, as required by the statute, that "so much of each tract of land, or town lots," described in the list, "as may be necessary for that purpose," will be sold for taxes, interest and charges, etc. The mailing, publishing, and posting of the notice of tax sale, which is presumed to have been regularly done, and the reading of the notice by the treasurer at the sale, was equivalent to an offer to receive any proper bid, including one upon less than the whole amount of any tract of land or town lot, or parcel, subject to tax sale, and it was not necessary for the county treasurer, in order to conduct the tax sale legally, expressly to inquire if any one present desired to, or would, take or bid upon a less amount of any parcel than the whole thereof.

At the tax sale in question, only one bid was received or made, the same being for the whole of the three town lots in controversy, which had been assessed and were offered for sale as one parcel. No one offered to take less than the whole of the property. Under these circumstances, the statutes relating to tax sales not only warranted, but also required, that the county treasurer sell the real estate in question to the bidder above mentioned, or to the person offering to take the whole of the tract when no one offered

to take a lesser quantity. The statutes clearly contemplate that ordinarily and usually a tax sale shall be made of the whole of any tract or parcel rather than of a portion of the same. Under section 2314, G. L. 1877, repealed in 1902, it was, in effect, provided that the sale should be made to "the person who offers to pay the amount due on any parcel for the smallest portion of the same." Under the statute now in force, section 5720, R. S. 1908, enacted in 1902, the provision above quoted is omitted, and the county treasurer is directed to sell the land to the person offering to pay the taxes, etc., "and who shall further offer to accept any lower rate or rates of interest," etc. The form of the tax deed prescribed by the old and repealed statute, section 2332, G. L. 1877, recited that the property sold "was the least quantity bid for," while the form of tax deed prescribed by the statute now in effect, section 5729, R. S. 1908, omits any such recital, but instead thereof recites that the rate of interest offered by the purchaser was "the lowest rate of interest at which any person offered to pay the said taxes, interest and costs," etc. Section 5713, R. S. 1908 authorizes the sale of the whole of any tract, since it provides that a tax sale may be continued "until each parcel shall be sold, or so much of each parcel as shall be sufficient," etc. Reference could be made to other clauses found in the statutes, to the same effect.

Counsel for the plaintiff call attention to a clause found in section 5720, R. S. 1908 to the effect that the land "shall be sold as an entirety to the person offering to accept the lowest rate or rates of interest." However, neither this language nor any other language in the section prohibits the sale of the land "as an entirety" if no such lower rate of interest is offered, or if only a bid at the maximum rate of interest is received from one offering to take the whole of the tract.

In view of the language and provisions of the statutes now in force, above cited, and of the circumstances attending the tax sale in question, as above noted, the defendant's

tax deed is not invalid upon the ground here urged by the plaintiff and above considered.

It is further contended that the tax deed is void because the land "was struck off to the bidder at the maximum rate of interest." The fact, on which this contention is based, does not, under the circumstances which attended the tax sale, invalidate the sale or the deed thereafter issued. No one offered to take the property at a lower rate of interest, and therefore the county treasurer was bound, as well as authorized, to sell the lots to the bidder who offered to take the property at the maximum rate of interest.

The plaintiff, for the first time upon this review, raises the question of proof of the defendant's possession of the premises in controversy. This question was not, in any manner, raised in the trial court, and under the principles announced in *Relender v. Riggs,* 20 Colo. App. 423, 428, 79 Pac. 328, is deemed to have been waived.

The defendant's tax deed is valid on its face, and, for the reasons hereinbefore stated, the plaintiff's various contentions, to the effect that the deed is void, cannot be sustained. We hold that the tax deed is valid, and find that it was issued long after the execution of the plaintiff's trust deed. The tax deed being valid, extinguished the lien of the trust deed. *Wells v. Brown,* 23 Colo. App. 190, 128 Pac. 869; 37 Cyc. 1476. The trial court, therefore, erred in holding the tax deed to be void and in finding that the deed of trust is a valid and subsisting lien on the premises. The judgment is reversed with directions to enter a decree quieting title to the lots in controversy in the defendant.

Reversed.

Chief Justice Garrigues and Mr. Justice Bailey concur.